# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Fiege, | Case No. 23-cv-0602 (NEB/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MEnD Correctional Care, Todd Leonard, Saint Louis County, Saint Louis County Sheriff's Office, Washington County, Washington County Sheriff's Office, Dr. Joel Jensen, Minnesota Department of Corrections, and J. Does 1–10, individually and in their official capacities, | |
| Defendants. | |

This matter is before the Court on the Motions to Dismiss Plaintiff Jared Fiege's Complaint, filed by Defendants Saint Louis County and Saint Louis County Sheriff's Office (Doc. 17), Minnesota Department of Corrections (Doc. 26), and Washington County and Washington County Sheriff's Office (Doc. 35). This case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Mr. Fiege asserts that while he was incarcerated at the Saint Louis County jail and the Washington County jail for approximately two months in 2019, he received poor medical care. (*See generally* Doc. 1.) The Minnesota Department of Corrections ("DOC") investigated his complaints but found them unsubstantiated. (Doc. 1 at 12 ¶¶ 47–50.) Mr.

Fiege subsequently filed this lawsuit pursuant to 42 U.S.C. § 1983, asserting constitutional claims against: Saint Louis County and the Saint Louis County Sheriff's Office (Doc. 1 at 14–17 (Counts I and II)); Washington County and the Washington County Sheriff's Office (Doc. 1 at 18–21, 24–25 (Counts IV, V, and VIII)); and the Minnesota DOC (Doc. 1 at 22–25 (Counts VII and VIII)).[1]

Saint Louis County, Saint Louis County Sheriff's Office, Washington County, and Washington County Sheriff's Office (collectively "County Defendants") all moved to dismiss on similar bases: (1) that Sheriff's Offices are not proper defendants because they are operating divisions of the Counties; (2) that Mr. Fiege's medical indifference claims are properly read as seeking to impose *respondeat superior* liability which is unavailable against municipalities; and (3) that Mr. Fiege's pleading fails to establish a basis for direct liability for either County. (Docs. 19, 37.) The Minnesota DOC's motion to dismiss is based on Eleventh Amendment immunity, and the fact that the state is not a "person" for purposes of § 1983 damages litigation. (Doc. 28.)

Upon learning of Defendants' motions to dismiss, Mr. Fiege filed a letter requesting more time to respond to the motions, as well as leave to amend his complaint "which would make some of the various arguments brought forth by various defendants moot." (Doc. 49.) Because at the time Mr. Fiege was still entitled to amend his complaint as of right, the Court denied his request without prejudice. (Doc. 51.) The Court further granted Mr. Fiege's request for additional time to respond to Defendants' motions to dismiss, extending

---

[1] Mr. Fiege asserted claims against other defendants as well, but those are not the subject of this Report and Recommendation.

his response deadline by 60 days, to September 4, 2023. (*Id.*) Mr. Fiege filed two other extension requests (Docs. 57, 66), which the Court granted (Docs. 58, 67). Mr. Fiege's response was due November 20, 2023. (Doc. 67.)

On November 28, 2023, the Court received a two-page letter from Mr. Fiege, part of which appears to be his response to Defendants' motions to dismiss. (Doc. 68.) He asks that the Court construe his pleadings liberally, given his *pro se* status, and generally asserts his view that he has stated valid claims against each defendant. (*Id.*) The County Defendants submitted reply memoranda to Mr. Fiege's letter. (Docs. 70, 75.) The Minnesota DOC filed a letter indicating it would not be submitting a reply memorandum. (Doc. 74.) Mr. Fiege has not sought to file an amended complaint.

The Court considers this matter fully briefed. For the reasons stated below, the Court recommends granting Defendants' motions to dismiss. The County Defendants are correct that Mr. Fiege cannot maintain independent claims against their Sheriff's Offices, and there is no factual or legal basis to find the County Defendants directly or vicariously liable. As for the Minnesota DOC, it enjoys Eleventh Amendment immunity from Mr. Fiege's claims. The Court further recommends that dismissal be with prejudice for all moving defendants, except for Saint Louis County and Washington County, who the Court recommends dismissing without prejudice.

**FACTUAL BACKGROUND**

Mr. Fiege filed this *pro se* civil rights action on March 13, 2023, alleging he received constitutionally-inadequate care while he was incarcerated at the Saint Louis and

Washington County jails in 2019. (Doc. 1.) According to Mr. Fiege's complaint,[2] he was arrested on March 22, 2019, and taken to the Saint Louis County, Minnesota jail. (*Id.* at 6–7 ¶¶ 13–16.) At the time, Saint Louis County contracted out its inmate health care to MEnD Correctional Care ("MEnD"), a private entity.[3] (*Id.* at 1 ¶¶ 2–3.). Upon arriving at the jail, Mr. Fiege told a corrections officer that he was experiencing severe abdominal pain, which the officer passed along to a MEnD registered nurse. (*Id.* at 7 ¶¶ 16–17.)

About an hour later, Mr. Fiege met with a MEnD registered nurse. (*Id.* at 7 ¶ 17.) Mr. Fiege explained to the nurse that he had been having episodes of severe abdominal pain for about a year, and that he had been advised by his medical care team to go the emergency room during the next occurrence. (*Id.* at 7 ¶¶ 18–19.) The nurse advised Mr. Fiege that she would pass his medical information along to a doctor, who would determine a treatment plan. (*Id.* at 7–8 ¶¶ 20–21.)

Mr. Fiege alleges that over the next two weeks, he complained many times and through several channels that he was still in severe pain, asking MEnD employees (identified in the complaint as Does 1–3) to move him to a hospital. (*Id.* at 8 ¶¶ 23–24.) His requests were denied. (*Id.*) Todd Leonard, MEnD's Chief Medical Officer, diagnosed Mr. Fiege with gastritis and a hiatal hernia.[4] (*Id.* at 2 ¶ 3, 8 ¶ 24.)

---

[2] Because this matter comes before the Court on motions to dismiss, the Court accepts all allegations set forth in Mr. Fiege's complaint as true, giving him the benefit of reasonable inferences drawn from those allegations as well. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[3] MEnD was originally a defendant in this action but has been dismissed without prejudice based on Mr. Fiege's failure to effect timely service. (Doc. 76.)
[4] Like MEnD, Mr. Leonard was originally a defendant in this action, but has been dismissed without prejudice based on Mr. Fiege's failure to effect timely service. (*Id.*)

4

On April 6, 2019, Mr. Fiege became incapacitated from pain. (*Id.* at 9 ¶¶ 26–27, 29–30.) Mr. Fiege requested to go to the emergency room, but corrections officers deferred to MEnD personnel, who denied the request because it appeared Mr. Fiege was faking the pain. (*Id.* at 9 ¶¶ 28–30.[5]) That same day, Mr. Fiege was transported from the Saint Louis County jail to the Washington County jail. (*Id.* at 9–10 ¶¶ 32–33.) During the drive, Mr. Fiege told a Washington County Sheriff's Deputy about his abdominal pain; the deputy in turn advised Mr. Fiege to let medical staff know about his pain when they arrived at the jail. (*Id.* at 10 ¶ 33.)

Once at the Washington County jail, Mr. Fiege told a corrections officer that he was experiencing severe abdominal pain. (*Id.* at 10 ¶ 34.) The officer alerted medical staff, and a registered nurse (identified as Doe 4) examined Mr. Fiege. (*Id.* at 10 ¶¶ 34–35.[6]) Mr. Fiege asked to go to the emergency room, but the nurse refused this request, telling Mr. Fiege that decision was up to a medical doctor (presumably Dr. Joel Jensen,[7] who treated Mr. Fiege through the rest of his stay at the Washington County jail). (*Id.* at 10 ¶¶ 35–36.)

According to Mr. Fiege, Dr. Jensen ordered a CT scan of his abdomen and concluded Mr. Fiege had a calcified gallbladder. (*Id.* at 10–11 ¶¶ 37–38.) Dr. Jensen characterized this condition as "not emergent," and advised Mr. Fiege that extraction surgery would not be done while he was at Washington County jail. (*Id.* at 11 ¶ 39.) After conducting another review of Mr. Fiege's medical records, Dr. Jensen changed his

---

[5] Mr. Fiege's complaint contains two paragraphs numbered 29. (Doc. 1 at 9.)
[6] Mr. Fiege's complaint contains two paragraphs numbered 35. (*Id.* at 10.)
[7] Mr. Fiege has also sued Dr. Jensen in this case, and Dr. Jensen has answered the complaint. (Docs. 1, 52.)

diagnosis, identifying the cause of Mr. Fiege's pain as gastritis and a hiatal hernia. (*Id.* at 11 ¶ 40.) Dr. Jensen prescribed Mr. Fiege Tylenol and a clear liquid diet. (*Id.* at 11 ¶¶ 41–43.)

Mr. Fiege alleges that his clear-liquid diet was nutritionally deficient, something he complained about to jail staff by filing grievances. (*Id.* at 11–12 ¶¶ 43–46.) Eventually, Mr. Fiege filed a complaint with the Minnesota DOC. (*Id.* at 12 ¶¶ 47.) Minnesota DOC assigned an investigator who reviewed Mr. Fiege's complaint, his grievances, his medical records, and his course of medical treatment. (*Id.* at 12 ¶¶ 48–49.) The investigator also personally met with Mr. Fiege. (*Id.* at 12 ¶ 49–50.) The investigator concluded that Mr. Fiege was receiving adequate medical treatment, adequate nutrition, and that no state law or policy had been violated. (*Id.* at 12 ¶ 50.[8])

On May 16, 2019, Mr. Fiege was transferred back to the Saint Louis County jail. (*Id.* at 12 ¶ 51–52.) On arrival, Mr. Fiege told jail and MEnD staff that he was having severe abdominal pain and would like to be hospitalized or medicated. (*Id.* at 13 ¶ 53.) According to Mr. Fiege, he instead remained in custody without medication or treatment. (*Id.*)

The next day, Mr. Fiege was released from custody. (*Id.* at 13 ¶ 54.) Mr. Fiege then sought his own medical care, resulting in the removal of his gallbladder. (*Id.* at 13 ¶¶ 55–59.) According to Mr. Fiege since his surgery he "experiences no abdominal pain of any kind." (*Id.* at 14 ¶ 63.) But he alleges that his liver enzymes are chronically and irreversibly

---

[8] Mr. Fiege's complaint contains two paragraphs numbered 50. (Doc. 1 at 12.)

elevated, something he attributes to "the prolonged prescription and doses of Tylenol" during his 8-week incarceration. (Doc. 1 at 13–14 ¶¶ 56, 61–62, 64.)

## ANALYSIS

In support of their motions to dismiss, the County Defendants assert that Mr. Fiege cannot maintain independent claims against the County Defendants' Sheriff's Offices, since those entities are just operating divisions of the counties. They also maintain that Mr. Fiege's claims are properly construed to allege wrongdoing by his medical providers, none of which is attributable to the County Defendants. Finally, the County Defendants assert that they cannot be liable under a *Monell*[9] theory because Mr. Fiege has not alleged that a policy or custom of misconduct led to his harm.

In support of its own motion to dismiss, the Minnesota DOC argues that Mr. Fiege's choice of party is fatal to his claims for two reasons: (1) the Eleventh Amendment bars claims seeking money damages against the state, and that immunity extends to state agencies such as the DOC; and (2) the state is not a "person" for § 1983 purposes (as opposed to individuals acting under color of state law).

Rule 12(b)(6) dismissals "eliminate actions which are fatally flawed in their legal premises" and destined to fail. *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). When a party moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the pleading in the light most favorable to the nonmoving party, assuming the truth of all factual allegations. *Id.*; *see also Neitzke v. Williams*, 490

---

[9] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

7

U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance [] dismissals based on a judge's disbelief of a complaint's factual allegations.").

The Court tests a Rule 12(b)(6) motion to dismiss under the pleading standards set forth in Federal Rule of Civil Procedure 8. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2).) While detailed factual allegations are not necessary, a plaintiff must plead more than just labels or conclusions, naked assertions, or formulaic recitations of elements of claims. *Id.* at 678. The plaintiff must plead facts that demonstrate the claim against each defendant is facially plausible. That is, the complaint must contain allegations from which a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

One other principle guides this Court's review. Because Mr. Fiege is proceeding *pro se*, he is entitled to some leeway. "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold a *pro se* complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (cleaned up).

I.  **The Saint Louis and Washington County Sheriff's Offices are not proper parties.**

Mr. Fiege has alleged that Defendant Saint Louis County Sheriff's Office "is a department and sub-organization of" Defendant Saint Louis County. (Doc. 1 at 3 ¶ 5.) He makes an identical allegation regarding Defendant Washington County Sheriff's Department's relationship to Defendant Washington County. (Doc 1 at 4 ¶ 7.)

8

State law determines whether the County Defendants' Sheriff's Offices may be sued. Fed. R. Civ. P. 17(b)(3). "Although the capacity of a sheriff's department to be sued must ultimately be determined by state law, most courts that have considered the issue have found that a sheriff's department, (like a police department), cannot be sued as such." *Tisdell v. Crow Wing Cnty.*, No. 13-cv-2531 (PJS/LIB), 2014 WL 1757929, at *3 (D. Minn. Apr. 30, 2014) (quoting *Polta v. City of St. Paul Police Dep't*, No. 06-cv-1014 (PAM/AJB), 2006 WL 1174210, at *2 (D. Minn. May 1, 2006)). That includes courts in this District, *see In re Scott Cnty. Master Docket*, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987) (summarily dismissing claims against county sheriff's department because it is not a legal entity), *aff'd sub nom. Myers v. Scott Cnty.,* 868 F.2d 1017 (8th Cir. 1989) , and Minnesota state appellate courts, *see, e.g.*, *Maras v. City of Brainerd*, 502 N.W.2d 69, 79 (Minn. Ct. App. 1993) (sheriff's department not a legal entity subject to suit).

By his own pleading, Mr. Fiege concedes that the Saint Louis and Washington County Sheriff's Offices are not independent legal entities. Minnesota courts, as well as federal courts interpreting Minnesota state law, agree with Mr. Fiege. Because these Defendants are not legal entities subject to suit, the Court recommends granting the County Defendants' motion to dismiss Defendants Saint Louis County Sheriff's Office and Washington County Sheriff's Office. Additionally, no set of well-pleaded circumstances could revive claims against these two entities, so the Court recommends that dismissal be with prejudice. *Accord Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 832 (D. Minn. 2012) (dismissal with prejudice is appropriate when allegations are "so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading").

## II. Mr. Fiege has not pled facts from which a Court could find the County Defendants liable.

The County Defendants next argue that each of them is entitled to dismissal because they are not vicariously liable for acts of the medical providers, and because no facts would support a theory of direct liability based on County Defendants' policies or customs.

"A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *see also Irvin v. Richardson*, 20 F.4th 1199, 1208–09 (8th Cir. 2021) ("Mere employment of a tortfeasor does not provide a basis for [§ 1983] liability."); *Edner v. Ottertail Cnty., Minn.*, No. 20-cv-2402 (NEB/LIB), 2021 WL 2493806, at *2 (D. Minn. June 18, 2021). These direct liability claims, commonly called *Monell* claims, attach where a municipality's policy or custom caused the plaintiff's constitutional deprivation. *Monell*, 436 U.S. at 690.

> Policy and custom are not the same thing. A policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Indep., Mo.*, 829 F.3d 695, 699–700 (8th Cir. 2016) (internal citations and quotation marks omitted). A municipality's failure to train or supervise its subordinates may be a basis for *Monell* liability as well. *Id.* at 699.

10

Although Mr. Fiege asserts Fourth, Eighth, and Fourteenth Amendment claims against the County Defendants, he does not set forth facts from which a Court could conclude that liability attaches to these parties. His complaint makes clear that his direct targets are the medical providers at both Saint Louis County jail and Washington County jail. (Doc. 1 at 2 ¶ 4 (asserting that Saint Louis County is being sued because it contracted with MEnD, who provided Mr. Fiege with inadequate medical care), 3 ¶ 6 (asserting Washington County is being sued because it employed Dr. Joel Jensen and other medical professionals who provided Mr. Fiege with inadequate medical care[10]).) But employing a tortfeasor, without more, cannot establish § 1983 liability against a municipality. *Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021).

The Court next addresses whether Mr. Fiege has stated a claim against the County Defendants based on a traditional *Monell* theory, that is, whether the County Defendants maintained an official policy or unofficial custom (including a custom of failing to train or supervise) that affected Mr. Fiege's constitutional rights. No reasonable reading of Mr. Fiege's complaint suggests that the County Defendants maintained an official policy leading to inadequate medical care; at best, Mr. Fiege may be asserting that the County Defendants' policy of employing others to provide that care led to his harm. But that is

---

[10] Defendant Washington County objects to Mr. Fiege's assertion that Dr. Joel Jensen and other medical professionals were employed by Washington County directly and filed a declaration and exhibit purporting to show that Washington County contracted out inmate health services to a private entity. (Doc. 38.) It is doubtful the Court could consider such evidence on a motion to dismiss, *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012), and Washington County provides no basis for its consideration. More importantly, whether these defendants are employed directly by Washington County or contracted through the County does not affect the Court's analysis.

simply employing a tortfeasor, not a policy. And to suggest the County Defendants are directly liable based on a custom, failure to supervise, or failure to train theory based on Mr. Fiege's allegations stretches matters too far. Mr. Fiege contends he was sick with severe abdominal pain in both the Saint Louis and Washington County jails. When he brought his ailments to the attention of his jailers, they provided Mr. Fiege medical attention. By his own account, Mr. Fiege was seen and assessed several times by nurses and doctors over his eight weeks of incarceration. These medical professionals examined Mr. Fiege, reviewed his medical records, and provided Mr. Fiege with treatment based on their diagnoses. While Mr. Fiege complains that those diagnoses were wrong, municipal liability requires evidence of either an unofficial custom of providing constitutionally inadequate medical care, or a failure to train or supervise medical professionals in a manner that was deliberately indifferent to Mr. Fiege's constitutional rights. *Robbins*, 984 F.3d at 682. By Mr. Fiege's allegations, just the opposite was true: when he complained to jailers, they promptly sought to have Mr. Fiege treated by medical professionals—registered nurses and doctors with an expertise that jailers likely did not have. And Mr. Fiege presents no allegations from which the Court could reasonably infer a "continuing, widespread, persistent pattern of unconstitutional misconduct in the form of denying emergency medical care to inmates in need of that care." *Corwin*, 829 F.3d at 700 (cleaned up). Generally, allegations of isolated misconduct cannot sustain a *Monell* claim based on a supposed municipal custom. *Id.* Therefore, the Court recommends dismissing Mr. Fiege's claims against Defendants Saint Louis County and Washington County without prejudice.

## III. The Minnesota DOC is not a proper party.

Finally, the Minnesota DOC asserts that Mr. Fiege's claims cannot go forward because Mr. Fiege has sued a state entity immune from suit and not otherwise a proper § 1983 defendant.[11]

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).

> The Minnesota Department of Corrections is an agency of the State of Minnesota. As an agency of the State of Minnesota, the Minnesota Department of Corrections is invested with [Eleventh Amendment] sovereign immunity coextensive with that of the state itself. Accordingly, Plaintiff may maintain his § 1983 claim against the Minnesota Department of Corrections only if he demonstrates that Minnesota has unequivocally consented to suit in this case or that Congress has abrogated Minnesota's immunity from an action brought pursuant to § 1983.

*Kleiber v. Minnesota Dep't of Corr.*, No. 23-cv-311 (PJS/LIB), 2023 WL 6393219, at *5 (D. Minn. Aug. 29, 2023) (internal citations and quotation marks omitted), *R. & R. adopted*, 2023 WL 6392298 (D. Minn. Oct. 2, 2023).

Mr. Fiege does not suggest, either in his complaint or his response to Defendants' motions to dismiss, that the state has consented to his suit or that Congress has abrogated the state's immunity from suit. Because the Eleventh Amendment bars Mr. Fiege's suit

---

[11] The Minnesota DOC also asserts that Mr. Fiege could not plausibly allege any claims against individual DOC employees since he was held in county jails. (Doc. 28 at 4–5.) While it is true that Mr. Fiege was in county jail, Mr. Fiege also alleged that at least one DOC employee investigated his misconduct claims and took no remedial action. (Doc. 1 at 12 ¶¶ 47–50, 22 ¶ 123.) Such a claim, properly pled, may be cognizable. *Accord Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Since Mr. Fiege did not sue this individual, the Court expresses no opinion on whether such a claim would survive scrutiny.

13

against the Minnesota DOC, the Court recommends dismissing the claims against Minnesota DOC.

Even without Eleventh Amendment immunity, Mr. Fiege could not proceed as pled against the Minnesota DOC. Mr. Fiege seeks only monetary damages, not declaratory or injunctive relief. (*See* Doc. 1 at 22–23 ¶¶ 127–29, 24–25 ¶¶ 135–38, 25 (Request for Relief).) A state or its agency is not a considered a "person" for purposes of § 1983 damages claims, and only "persons" can be sued for § 1983 damages claims. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 & n.10 (1989). Mr. Fiege could not maintain his claim against the Minnesota DOC as pled given the absence of any request for equitable relief.

For the reasons above, the Court recommends dismissing Mr. Fiege's claims against the Minnesota DOC. Additionally, because the Eleventh Amendment is a complete bar to claims such as these, the Court recommends dismissing these claims with prejudice. *Kleiber*, 2023 6393219, at *6 (citing Eighth Circuit and District of Minnesota cases granting dismissal with prejudice for Eleventh Amendment immunity).

## RECOMMENDATION

Accordingly, based on the all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Defendants Saint Louis County and Saint Louis County Sheriff's Office's Motion to Dismiss (Doc. 17) be **GRANTED**, Defendant Saint Louis County be **DISMISSED WITHOUT PREJUDICE**, and Defendant Saint Louis County Sheriff's Office be **DISMISSED WITH PREJUDICE**;

2. Defendants Washington County and Washington County Sheriff's Office's Motion to Dismiss (Doc. 35) be **GRANTED**, Defendant Washington County be **DISMISSED WITHOUT PREJUDICE**, and Defendant Washington County Sheriff's Office be **DISMISSED WITH PREJUDICE**; and

3. Defendant Minnesota DOC's Motion to Dismiss (Doc. 26) be **GRANTED** and Defendant Minnesota DOC be **DISMISSED WITH PREJUDICE**.

DATED: January 30, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).